J. Malcolm DeVoy IV (Wisconsin Bar No. 1079780)
RANDAZZA LEGAL GROUP
7001 W. Charleston Blvd., #1043
Las Vegas, NV 89117
888-667-1113 (phone)
305-437-7662 (fax)
jmd@Randazza.com

Attorney for Plaintiff,
LIBERTY MEDIA HOLDINGS, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN, MILWAUKEE DIVISION

| | | |
|---|---|---|
| LIBERTY MEDIA HOLDINGS, LLC | ) | Case No. |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| vs. | ) | |
| | ) | (1) DIRECT COPYRIGHT |
| SWARM OF NOVEMBER 16 to 28, 2010, | ) | INFRINGEMENT, 17 U.S.C. § 501 |
| SHARING HASH FILE | ) | (2) CONTRIBUTORY COPYRIGHT |
| AE340D0560129AFEE8D78CE07F2394C | ) | INFRINGEMENT |
| 7B5BC9C05; AND DOES 1 through 4, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Liberty Media Holdings (hereinafter "Liberty" or the "Plaintiff") files this complaint against multiple unknown Defendants and alleges as follows:

## I. NATURE OF THE CASE

1.  Plaintiff is the registered owner of the copyright to a motion picture, "Down on the Farm" (hereinafter the "Motion Picture"). A true and correct copy of the Certificate of Registration for the Motion Picture is attached hereto as Exhibit 1.

2.  Defendants, whose true identities are currently unknown, acted in a collective and interdependent manner in the unlawful reproduction and distribution of Plaintiff's Motion Picture using BitTorrent file transfer protocol.

3.  Each time a Defendant unlawfully distributes a copy of Plaintiff's copyrighted Motion Picture to others over the Internet, particularly via BitTorrent, each recipient can then

1

distribute that unlawful copy of the Motion Picture to others without degradation in sound or picture quality. Thus, a Defendant's distribution of even a single unlawful copy of the Motion Picture can result in the nearly instantaneous worldwide distribution of that single copy to a limitless number of people. In this case, each Defendant's copyright infringement built upon the prior infringements, in a cascade of infringement.

4. Plaintiff seeks redress for the Defendants' rampant infringement of its exclusive rights in the Motion Picture, and for injunctive relief to stop Defendants from continuing to infringe upon Plaintiff's copyrighted works.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's claims for copyright infringement and related claims pursuant to 17 U.S.C. §§ 101, et. seq., and 28 U.S.C. §§ 1331 and 1338(a).

6. Defendants either reside in, solicit, transact, or are doing business within the Jurisdiction; they have committed unlawful and tortious acts both within and outside the Jurisdiction with the full knowledge that their acts would cause injury in this Jurisdiction. As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over each

7. Plaintiff's claims arise out of the Defendants' conduct which gives rise to personal jurisdiction over Defendants.

8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a). Although the true identities of each and every member of the collective formed by the Defendants is unknown to the Plaintiff at this time, on information and belief, each Defendant may be found in this District and/or a substantial part of the infringing acts complained of herein occurred in this District, and Defendants can reasonably anticipate being hauled into court in this District.

## III. THE PARTIES

### A. The Plaintiff, Liberty Media Holdings, LLC

9. Liberty is a California LLC with a mailing address of 302 Washington Street, Suite 321, San Diego, CA 92103.

### B. The Defendants

10. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants John Does 1-4 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff knows each Defendant only by the Internet Protocol ("IP") address assigned to the account used by the Defendant by the account holder's Internet Service Provider ("ISP") on the date and at the time at which the infringing activity of each Defendant was observed. The IP address used by each Defendant thus far identified, together with the date and time at which his or her infringing activity was observed is listed below.

11. Plaintiff intends to subpoena the ISPs that issued the Defendants' IP addresses in order to learn the identity of the account holders for the below IP addresses. In most cases, the account holder will be the proper defendant in this case. However, further discovery may be necessary in some circumstances in order to be certain of the identity of the proper defendant.

12. The Defendants are a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm". The particular file a BitTorrent swarm is associated with has a unique "hash" (a file identifier generated by an algorithm developed and implemented by the National Security Agency). The hash value in this case is identified as AE340D0560129AFEE8D78CE07F2394C7B5BC9C05 (hereinafter the "AE3 Hash").

13. Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants was and is the agent of the other Defendants, acting within the purpose and scope of said agency. Plaintiff is further informed and believes and based thereon alleges that each of the Defendants authorized and ratified the conduct herein alleged of each of the other Defendants.

3

14. Plaintiff believes that information obtained in discovery will lead to the identification of each Defendants' true names and permit the Plaintiff to amend this Complaint to state the same. Plaintiff further believes that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this Complaint as defendants. Plaintiff will amend this Complaint to include their proper names and capacities when they have been determined. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendants participated in and are responsible for the acts described in this Complaint and damage resulting therefrom.

15. Plaintiff alleges on information and belief that each of the Defendants named herein performed, participated in, or abetted in some manner, the acts alleged herein, proximately caused the damages alleged and are liable to Plaintiff for the damages and relief sought herein.

16. Each of the fictitiously named defendants engaged in their copyright infringement scheme together. They all shared and republished the same Motion Picture, and thus collectively participated in the same swarm sharing the AE3 Hash on the exact same dates, from November 16, 2010 to November 28, 2010.

17. The torrent swarm in this case is not an actual entity, but is rather made up of at least 95 individuals, acting in concert with each other, to achieve the common goal of infringing upon the Plaintiff's copyrights both by illegally duplicating the Plaintiff's Motion Picture and illegally distributing the Plaintiff's Motion Picture.

**Defendant Doe 1**

18. Defendant Doe 1 is unknown, but used the following IP address: 65.29.145.33.

19. Doe 1 used this IP address to illegally republish and illegally distribute copies of the Plaintiff's copyrighted Motion Picture through the use of the AE3 Hash to an unknown number of other individuals over the Internet.

20. The infringing activity took place on November 16, 2010 at 9:19:27 a.m. UTC.

21. As Doe 1 was the first one detected as having distributed the Motion Picture, Doe 1 is, on information and belief, the initial propagator of the AE3 Hash in the Bit Torrent swarm of November 16, 2010.

### Defendant Doe 2

22. Defendant Doe 2 is unknown, but used the following IP address: 65.30.188.138.

23. Doe 2 used this IP address to illegally republish and illegally distribute the Plaintiff's copyrighted Motion Picture through the use of the AE3 Hash to an unknown number of other individuals over the Internet.

24. The infringing activity took place on November 16, 2010 at 11:01:21 p.m. UTC, 13 hours, 41 minutes and 54 seconds after Doe 1.

### Defendant Doe 3

25. Defendant Doe 3 is unknown, but used the following IP address: 65.31.136.139.

26. Doe 3 used this IP address to illegally republish and illegally distribute the Plaintiff's copyrighted Motion Picture through the use of the AE3 Hash to an unknown number of other individuals over the Internet.

27. The infringing activity took place on November 17, 2010 at 8:38:20 a.m. UTC, 9 hours, 36 minutes and 59 seconds after Doe 2.

### Defendant Doe 4

28. Defendant Doe 3 is unknown, but used the following IP address: 12.54.26.118.

29. Doe 3 used this IP address to illegally republish and illegally distribute the Plaintiff's copyrighted Motion Picture through the use of the AE3 Hash to an unknown number of other individuals over the Internet.

30. The infringing activity took place on November 28, 2010 at 9:09:09 p.m. UTC, 11 days, 12 hours, 30 minutes and 49 seconds after Doe 3.

### IV. COPYRIGHT AND BITTORRENT

31. BitTorrent is a peer-to-peer file sharing protocol used for distributing and sharing data on the Internet, including files containing digital versions of motion pictures. Rather than

downloading a file from a single source, the BitTorrent protocol allows users to join a "swarm," or group, of hosts to download and upload from each other simultaneously. The process works as follows:

a. First, users download a torrent file onto their computer. This file contains a unique hash code known as the SHA-1 hash – which is a unique identifier generated by a mathematical algorithm developed by the National Security Agency. This torrent file contains a "roadmap" to the IP addresses of other users who are sharing the media file identified by the unique hash value, as well as specifics about the media file. The media file could be any large file, such as a digital motion picture or music file.

b. Second, the user opens the torrent file with a BitTorrent program, also known as a BitTorrent "client" application, which is capable of reading the roadmap encoded in the torrent file. This client program, after reading the roadmap, connects "uploaders" of the file (i.e. those that are distributing the content) with "downloaders" of the file (i.e. those that are copying the content). During this process, the client reaches out to one or more "trackers" that are identified on the roadmap. A tracker is an Internet server application that records the IP addresses associated with users who are currently sharing any number of media files identified by their unique hash values and then directs a BitTorrent user's computer to other users who have the particular file each user is seeking to download.

32. For a BitTorrent user, this process is quite simple. When a BitTorrent user seeks to download a motion picture, he or she merely opens the appropriate torrent file, which may be found online on any number of torrent search engine websites, using a BitTorrent client application.

33. Because BitTorrent client software generally lacks the ability to search for torrents, end-users use search engines or other websites that contain indices of torrent files to find files being made available by other BitTorrent users. These torrent files do not contain audio or visual media, but instruct the user's BitTorrent client where to go and how to obtain the desired file.

6

34. The downloading user's BitTorrent client then extracts a list containing one or more tracker locations, which it then uses to connect to at least one tracker that will identify IP addresses where the file is available. Each IP address identifies an uploading user who is currently running a BitTorrent client on his or her computer and who is currently offering the desired motion picture file for download. The downloading user's BitTorrent software then begins downloading the motion picture file without any further effort from the user, by communicating with the BitTorrent client programs running on the uploading users' computers.

35. The life cycle of a file shared using BitTorrent begins with just one individual – the initial propagator, sometimes called a "seed" user or "seeder." The initial propagator intentionally elects to share a file with a torrent swarm. The original file, in this case, contains Plaintiff's entire copyrighted work.

36. Other members of the swarm connect to the seed to download the file, wherein the download creates an exact digital copy of Plaintiff's copyrighted work on the downloaders' computers. As additional thieves request the same file, each additional thief joins the collective swarm, and each new thief receives the same or different pieces of the file from each other thief in the swarm who has already downloaded any part of the file. Eventually, once the initial propagator has distributed each piece of the file to at least one other thief, so that together the pieces downloaded by members of the swarm comprises the whole motion picture when reassembled, the initial propagator may leave the swarm, and the remaining thieves can still obtain a full copy of the motion picture by exchanging the pieces of the motion picture that each one has.

37. Files downloaded in this method are received in hundreds or even thousands of individual pieces. Each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same complete file. The effect of this technology makes every downloader also an uploader of the content. This means that every user who has a copy of the infringing material in a swarm may also be a source for later downloaders of that material.

38. In the BitTorrent world, there is honor among thieves. Those who merely download files, without publishing and sharing files, are derisively called "leechers."

39. Being a leecher is not only a negative due to the pejorative terminology, but leechers are also punished by the torrent swarm.

40. BitTorrent's protocol stalls the downloads of leechers, in an effort to preserve network speed for the more prolific copyright infringers. The sharing of files as users receive them, then, is inherent in BitTorrent's use for the protocol to be of any utility to the end user.

41. This distributed nature of BitTorrent leads to a rapid viral sharing of a file throughout the collective peer users. As more peers join the collective swarm, the frequency of successful downloads also increases. Because of the nature of BitTorrent protocol, any seed peer that has downloaded a file prior to the time that a subsequent peer downloads the same file is automatically a source for the subsequent peer, so long as that first peer is online at the time the subsequent peer requests download of the file from the swarm. Because of the nature of the collective swarm downloads as articulated above, every infringer is – and by necessity together – simultaneously both stealing the Plaintiff's copyrighted material and redistributing it.

42. Plaintiff has recorded each Defendant named herein actually publishing the Motion Picture via BitTorrent.

43. Plaintiff's Motion Picture is easily discernable as a professional work. Plaintiff created the works using professional performers, directors, cinematographers, lighting technicians, set designers and editors. Plaintiff created each work with professional-grade cameras, lighting, and editing equipment.

44. Each of Plaintiff's works is marked with Plaintiff's trademark (CORBIN FISHER®), a copyright notice, a warning that unauthorized copying is illegal and will be prosecuted, and a statement as required by 18 U.S.C. § 2257 that age verification records for all individuals appearing in the works are maintained at corporate offices in San Diego, California.

45. At various times, Plaintiff discovered and documented its copyrighted work being publicly distributed by Does 1-95 by and through the BitTorrent network.

46. Defendants, without authorization, copied and distributed audiovisual works owned by and registered to Plaintiff in violation of 17 U.S.C. §§ 106(1) and (3).

## V. DEFENDANTS ARE MEMBERS OF A SINGLE BITTORRENT SWARM

47. Defendants are peer members who have all collectively participated in the same peer-to-peer (hereinafter, "P2P") network swarm that was utilized to unlawfully infringe upon Plaintiff's exclusive rights in its copyrighted film without permission.

48. Defendants initiated their infringement by searching for and obtaining a torrent file containing information sufficient to locate and download Plaintiff's copyrighted Motion Picture. Thereafter, each Defendant opened the torrent file using a BitTorrent client application that was specifically developed to read such files.

49. The unique file identifier generated by an algorithm developed by the National Security Agency associated with the instant action is the AE3 Hash. Each Defendant is a member of the same collective swarm associated with the AE3 Hash, and each acted collectively, and in concert, in effectuating the illegal and unauthorized sharing of Plaintiff's copyrighted work.

50. Each Defendant owns or otherwise has control of a different computer collectively connected to the Internet that contained – or possibly still contains – a torrent file identifying Plaintiff's copyrighted work. Each computer also contained or still contains Plaintiff's copyright work, which was downloaded using the information encoded in that torrent file.

51. All of the defendants republished and duplicated the Plaintiff's Motion Picture. Moreover, they did not only replicate the same motion picture, but all of the defendants, as members of the same swarm, republished, duplicated, and replicated the precise same copy and same AE3 Hash version of the Motion Picture, thus demonstrating that all of the defendants shared and replicated the same motion picture with one another, thus linking them all together in a massive conspiracy and concerted effort to deprive the Plaintiff of its exclusive rights in the Motion Picture under the Copyright Act.

52. Defendant peers each utilized a torrent file to upload and download Plaintiff's copyrighted film without permission through use of the BitTorrent file transfer protocol.

53. Each Defendant peer, consistent with using a BitTorrent P2P network, obtained a torrent file containing sufficient information to locate and download a copy of Plaintiff's Motion Picture.

54. After each Defendant peer downloaded a torrent containing information concerning sources of Plaintiff's copyrighted Motion Picture, each Defendant used that information to connect to other Defendants for the purpose of sharing Plaintiff's copyrighted work with other members of the BitTorrent collective network.

55. Plaintiff's copyrighted Motion Picture was then uploaded and downloaded through a single swarm collective among the various Defendants in concert – all members sharing the same exact video, using the same exact hash identifier.

56. Once connected to the BitTorrent swarm sharing Plaintiff's copyrighted Motion Picture, the Defendant peers shared the Motion Picture between each other by trading small portions of the file containing a digital copy of the Motion Picture. More precisely, the BitTorrent network divided the original copyrighted work into many small pieces and distributed these pieces throughout the swarm until each of the collectively participating Defendants in the swarm had a partial or complete infringing copy of the Motion Picture.

57. Based on this information, Defendants all participated in the same collective swarm, infringing upon Plaintiff's exclusive rights in its work by uploading (distributing) and downloading (reproducing) Plaintiff's copyrighted film, and through their actions each Defendant assisted each and every other Defendant, each members of the P2P network swarm, to illegally download Plaintiff's copyrighted work.

## VI. FIRST CAUSE OF ACTION
### (Copyright Infringement 17 U.S.C. § 501)

58. The Plaintiff re-alleges and incorporates by reference the allegations contained in each paragraph above.

10
Case 2:11-cv-00395-WEC    Filed 04/22/11    Page 10 of 14    Document 1

59. Plaintiff is, and at all relevant times has been, the copyright owner of the copyrighted work infringed upon by all Defendants, "Down on the Farm." Exh. 1.

60. Among the exclusive rights granted to each Plaintiff under the Copyright Act are the exclusive rights to reproduce the Motion Picture and to distribute it – rights which Defendants maliciously and intentionally infringed upon.

61. Plaintiff is informed and believes, and on that basis alleges, that Defendants without the permission or consent of Plaintiff, have used, and continue to use, the BitTorrent file transfer protocol to distribute the Motion Picture to the public, and/or make the Motion Picture available for distribution to others, including other BitTorrent users. In doing so, Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions constitute infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act.

62. Plaintiff is informed and believes and on that basis alleges that the foregoing acts of infringement were willful and intentional.

63. As a result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504(c), and to its attorney fees pursuant to 17 U.S.C. § 505.

64. The conduct of Defendants is causing and will continue to cause Plaintiff great and irreparable injury. Such harm will continue unless the Defendants are enjoined from such conduct by this Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyrights, and ordering Defendants to destroy all copies of the Motion Picture made in violation of Plaintiff's exclusive rights under the Copyright Act.

## VII. SECOND CAUSE OF ACTION
### (CONTRIBUTORY COPYRIGHT INFRINGEMENT)

65. Plaintiff re-alleges and incorporates by reference the allegations contained in each paragraph above.

66. It is helpful to think of the process of "torrenting" in the context of a constructed puzzle. In furtherance of sharing this puzzle, it is deconstructed into tiny pieces. These pieces are then uploaded and distributed among one or more peers. When an infringer seeks to download the original file, he downloads a torrent file containing information concerning where each of the distributed pieces of the file can be found, i.e., how to find and contact each peer. Each torrent file that contains information about the same original file is contains the same "hash" value, which is a string of letters and numbers that uniquely identifies the original file that the torrent file may be used to locate and download. This torrent file is capable of locating all the unique corresponding pieces that make up the original file (and any additional copies of each piece that may be available). Once all the pieces are located and downloaded they are reconstructed back into the original order completing the entire original copyrighted file.

67. When users all possess the same infringing work with the same exact hash value (as in this case), it is because each infringer possesses an *exact* digital copy, containing the exact bits unique to that file, of the original work. In essence, although hundred of users may be uploading the copyrighted work, you will receive only the exact parts of a singular upload, not a compilation of available pieces from various uploads.

68. Each of the Defendants published the precise same "hash" file, described in Paragraph 13, to the BitTorrent network.

69. Each Defendant downloaded, uploaded and distributed the Motion Picture to each other, in concert with one another and through use of the exact same protocol.

70. Because it is the exact same motion picture, using the exact same hash, in the same general timeframe, the transaction of events at issue in this Complaint is common to all Defendants, thus rendering the Defendants properly joined in this action.

71. BitTorrent users upload infringing works in concert in order to gain access and ability to download other infringing copyrighted works.

72. As each of the thousands of people who illegally downloaded the movie accessed this illegal publication, they derived portions of their illegal replication of the file from multiple persons, including but not limited to the Defendants named in this action.

73. The Defendants knew of the infringement, were conscious of their own infringement, and the Defendants were conscious of the fact that multiple other persons derivatively downloaded the file containing the Plaintiff's Motion Picture.

74. The infringement by other BitTorrent users could not have occurred but for the Defendant's participation in uploading the Plaintiffs protected work. As such, the Defendants participation in the infringing activities of others is substantial.

75. The Defendants each profited from this contributory infringement by way of being granted access to a greater library of other infringing works, some of which belonged to the Plaintiff and some of which belonged to other copyright owners.

## PLAINTIFF'S REQUEST FOR RELIEF

1. For an injunction providing:

    Defendant shall be and hereby is enjoined from directly or indirectly infringing upon the Plaintiff's copyrights in the Motion Picture or any other works, whether now in existence or later created, that are owned or controlled by Plaintiff (or any parent, subsidiary, or affiliate of Plaintiff), including without limitation by using the Internet or any online media distribution system to reproduce (i.e., download) any of Plaintiff's works, to distribute (i.e., upload) any of Plaintiff's works, or to make any of Plaintiff's works available for distribution to the public, except pursuant to a lawful license or with the Plaintiff's express consent. Defendant also shall destroy all copies of Plaintiff's works that Defendant has downloaded onto any computer hard drive or server and shall destroy all copies of those downloaded works transferred onto any physical medium or device in Defendant's possession, custody, or control.

2. For damages for each infringement of each copyrighted work pursuant to 17 U.S.C. § 504. These damages may be actual or statutory, but if statutory damages are elected, the Defendants' acts were willful in nature, justifying an award of up to $150,000 per infringement, and Plaintiff reserves the right to make such an election.

3. For Plaintiff's costs in this action.

4. For Plaintiff's attorneys' fees incurred in bringing this action.

5. For such other and further relief, either at law or in equity, general or special, to which the may be entitled.

Date: April 22, 2011.

s/ J. Malcolm DeVoy IV
J. Malcolm DeVoy IV
Wisconsin Bar No. 1079780
Randazza Legal Group
jmd@Randazza.com
7001 W. Charleston Blvd., #1043
Las Vegas, NV 89117
888-667-1113 (phone)
305-437-7662 (fax)